UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| V. : | Case No.: 1:19-CR-00115-JJM-PAS |
| : | |
| DOMINIQUE GOLDEN : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Dominique Golden, by and through counsel, submits this memorandum to aid the Court with imposing a sentence in this case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Ms. Golden requests a sentence of time served.

### I. BACKGROUND

The government filed a criminal complaint against Dominique Golden on September 5, 2019, alleging Mail Fraud in violation of 18 U.S.C. § 1341; Wire Fraud in violation of 18 U.S.C. § 1343; Conspiracy to Commit Wire Fraud and Mail Fraud in violation of 18 U.S.C. § 1349; Money Laundering in violation of 18 U.S.C. § 1956 (a)(1); Conspiracy to Commit Money Laundering in violation of 18 U.S.C. 1956 (h); and Violation of Senior Citizens Against Marketing Scams of 1994 in violation of 18 U.S.C. § 2326.[1] As a result, this Court approved for her arrest.[2]

On September 12, 2019, Ms. Golden was arrested pursuant to the above warrant in the Southern District of Texas, where she formerly resided.[3] She initially appeared that same day in U.S. District Court for the Southern District of Texas where she was ordered released on bond with conditions.[4] Ms. Golden then traveled to Rhode Island, voluntarily, to surrender herself

---

[1] PSR, ¶.1.
[2] *Id.*
[3] *Id.*
[4] PSR, ¶.2.

before this Court.[5] She made her initial appearance in Rhode Island on September 20, 2019, at which time she was released on the same conditions imposed in Texas.[6]

A federal grand jury returned both an original and a superseding indictment against Ms. Golden and her co-defendants.[7] The more recent indictment charged Ms. Golden on December 11, 2019, with Conspiracy to Commit Mail Fraud, eight counts of Mail Fraud, and three counts of Wire Fraud.[8]

On March 10, 2020, Ms. Golden was arrested and charged in the Northern District of Georgia with similar misconduct.[9] Following a detention hearing on March 13, 2020, she was denied bail.[10] Ms. Golden remained in pretrial custody in that district until resolving her case there by admitting guilt on September 30, 2021, to one count of Conspiracy to Commit Money Laundering.[11] She was sentenced on March 28, 2022, to serve 54 months of incarceration, followed by 3 years of supervised release.[12]

After the imposition of sentence in Georgia, Ms. Golden was transported by the U.S. Marshal's Service (USMS) to the District of Rhode Island in late August 2022. She then appeared before this Court on September 1, 2022,[13] and pursuant to a written plea agreement with the government,[14] admitted guilt to two counts of the superseding indictment: Count (1) charging Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349 and 1341 and Count (25) Wire Fraud in violation of 18 U.S.C. § 1343.[15] The Court accepted her pleas. Sentencing is presently scheduled for January 25, 2023.

---

[5] PSR, ¶.3.
[6] *Id.*
[7] PSR, ¶.4 and 7.
[8] PSR, ¶.7.
[9] PSR, ¶.9.
[10] *Id.*
[11] *United States v. Dominque Golden*, Case No. 1:20-CR-114-02-WMR-CCB-2
[12] PSR, ¶.9.
[13] PSR, ¶.10.
[14] Document No. 79 on the docket.
[15] The government will dismiss Counts 2, 4, 5, 7 – 10, 13, 18, 20 and 22 of at the time of sentencing.

## II. THE PRESENTENCE REPORT

U.S. Probation issued Ms. Golden's final presentence report (PSR) on January 18, 2023. The PSR calculates her total offense level at 26 and a criminal history category of III, with a resulting, advisory U.S. Sentencing Guidelines (U.S.S.G.) range of imprisonment from 78 months to 97 months.[16] The Defense has no objection to the U.S.S.G. calculations. However, the Defense asks the Court to order an amended report to implement various factual, mathematical, and grammatical corrections consistent with the requests set forth in a letter to U.S. Probation, dated January 17, 2023, which is hereby attached (Attachment A).[17]

## III. DOWNWARD DEPARTURE REQUEST

Ms. Golden asks this Court to grant her request for a downward departure pursuant to U.S.S.G. § 4A1.3 (b). This section of the guidelines provides that [i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

In this case, Ms. Golden qualifies for a criminal history category III.[18] She is assessed a total of four (4) criminal history points.[19] One (1) point is assessed for a historical DUI conviction she incurred in May 2014 at age 23.[20] The remaining three (3) points are assessed because of the sentence that she received in the Northern District of Georgia on March 28, 2022.[21] However, she was charged in that district, for similar misconduct, after being released

---

[16] PSR, ¶.139.
[17] Defense Counsel acknowledges that any proposed corrections and/or objections to the PSR should have been submitted by January 4, 2023. Counsel missed this deadline due to his inability to meet with Ms. Golden until Friday, January 12, 2023. He thereafter prepared the attached letter and caused it to be submitted to U.S. Probation on January 18, 2023.
[18] PSR, ¶.84.
[19] *Id.*
[20] PSR, ¶.82.
[21] PSR, ¶.83.

3

on bond by this Court. Once arraigned in Georgia, she was ordered held without bail, which prevented her from addressing and resolving this case in a timelier fashion. Had she been permitted to appear and resolve her case here more quickly, she would have only been assessed a single criminal history point for the historical DUI conviction, resulting in a criminal history category of I and a reduced advisory guidelines range of 62 – 78 months.

Further, the criminal conduct in both the Northern District of Georgia and the District of Rhode Island overlapped in terms of time. The conspiracy in Georgia was alleged to have lasted from approximately October 2012 to February 2020.[22] However, the indictment contains overt acts, which were mainly committed between 2017 and 2019. The conspiracy in Rhode Island is alleged to have lasted from May 2015 to November 2019. The conspiratorial conduct in both cases involved forms of fraud. The crimes followed pattern of both time and manner. Arguably, all of the conduct could have been prosecuted in one district, had Ms. Golden been offered the chance to waive venue. In any case, Ms. Golden is not more likely to reoffend because of her Georgia conviction, and therefore, she should not be treated as a Defendant whose criminal history and encounters with the criminal justice system truly justify being placed in criminal history category III. For these reasons, Ms. Golden requests a downward departure to criminal history category I.

### IV. SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*,

---

[22] PSR, ¶.83.

127 S. Ct. 2456, 2480 (2007)).  The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration.  *Id.*  A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case.  *Gall,* 128 S. Ct. at 597.  After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[23] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence in the instant case.  *Id*.  As such, Ms. Golden asks the Court to impose a sentence of time served, which when considering her recent sentence in the Northern District of Georgia, she will serve a sentence of 52 months.  In support of its sentencing recommendation, the Defense asks the Court to consider the following information.

**(1) The Nature and Circumstances of the Offense**

Ms. Golden accepts full responsibility for her involvement in the various conspiratorial and fraudulent conduct to which she admitted guilt.  However, it is important for the Court to know that Ms. Golden was not the mastermind of these schemes.  She also had no direct contact with any of the intended or actual victims who were defrauded.  Her actions were primarily limited to setting up fake companies and related bank accounts to receive, launder, and later

---

[23]To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
    (5) any pertinent policy statement issued by the Sentencing Commission;
    (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553 (a).

distribute the fraud proceeds to her co-defendants. While she financially profited from her actions, her gains were fractions of the total losses.

In the Northern District of Georgia, the loss amount was 7,925,727.60. For this amount, she received a base level offense of 8, pursuant to U.S.S.G. § 2S1.1 (a)(2), and a +18-point enhancement pursuant to U.S.S.G. 2B1.1 (b)(J) because the loss exceeded $3,500,000.00 and was less than $9,500,000.00. Here in Rhode Island, the loss was $2,545,041.21,[24] resulting in a +16-point enhancement pursuant to U.S.S.G. 2B1.1 (b)(I) because the loss exceeded $1,500,000.00 and was less than $3,500,000.00. Had all of the misconduct been charged in one indictment, Ms. Golden, would have been assessed a +20 enhancement in a single guidelines calculation, for a loss exceeding $9,500,000.00 pursuant to U.S.S.G. 2B1.1 (b)(K), opposed to facing two separate prosecutions. The losses in Rhode Island also represent approximately 30% of the losses in Georgia.

Ms. Golden was not born to be a criminal. Following a challenging and unstable upbringing, she was forced to support herself at a young age. With few friends, tenuous family support, and no real guidance or role models, she looked to romantic relationships with other men. This is how and when she became involved with the instant fraud. She was taught by her co-defendant, Wisdom Onyobeno, how to participate in the fraud by setting up shell companies and related bank accounts, into which fraud proceeds were deposited.[25] The two had a limited dating relationship, they evolved into their business, co-defendant relationship.[26] Upon becoming involved in this activity, Ms. Golden left the life of prostitution she was currently living and came to rely on the fraud proceeds as income, and to finance his lifestyle. At the time,

---

[24] PSR, ¶.70.
[25] PSR, ¶.49 – 51.
[26] PSR, ¶.49.

she did not view her conduct as that serious,[27] as she personally had no victim contact, and simply did not consider the consequences of her actions.[28]

Since the time of her initial arrest in Texas related to this case until the time of her second arrest related to the case in Georgia, Ms. Golden was compliant with the pretrial release conditions imposed by the Court. At one point, her restrictions were reduced, and she was authorized to travel outside her district of residence. She was also cooperative with police at the time of her arrest, which included waiving her legal rights and providing authorities with an incriminating statement confessing to her actions. All of this demonstrates Ms. Golden's respect for the law and appreciation for the nature and wrongfulness of her actions. She pleaded guilty just days after her return to the District of Rhode Island from the Northern District of Georgia, just as she accepted responsibility there. Ms. Golden fully embraces the full gravity of her misconduct, and impact it has had on others. She offers a sincere apology and deep remorse. Her goals now are to complete her jail sentence, and once released, focus on rebuilding in a constructive manner so that she may begin repairing the damage caused to others by her actions.

**(2) <u>History and Characteristics of the Defendant</u>**

Ms. Golden's story is neither easy to write, nor pleasant to read. Though a young and vibrant woman at age 31, it is what lies beneath the surface that requires careful attention. Ms. Golden's childhood and adolescence were beyond challenging. She and her sister were primarily raised by their mother, who apparently has mental health issues associated with being raised herself in foster care after witnessing "her mother murder her father."[29] With her own challenges, Glennie Barker sought to start her own family.

---

[27] PSR, ¶.57
[28] PSR, ¶.122.
[29] PSR, ¶.99.

Ms. Golden's parents, Glennie Fleming and Bernard Golden were only together for two years from 1991 to 1993.[30] They had Ms. Golden and her sister, Danielle.[31] Dependent on men, Glennie soon remarried Ms. Golden's first stepfather, Lonnie Cook.[32] Their relationship was explosive, and the home became a regular area for domestic violence.[33] Lonnie verbally and physically abused everyone in the house, to include Ms. Golden. Her mother was the most frequent target. Ms. Golden recounted and instance where she observed "Mr. Cook point[] a gun to her mother's head."[34] Though Ms. Golden's biological father was aware of this ongoing abuse, he never intervened or offered his girls a safe haven.[35]

Glennie divorced from the abusive Lonnie Cook in 2003[36] and wasting no time, she remarried Ms. Golden's second stepfather, Ronald Barker in 2004.[37] Arguably life with Ronald was slightly worse. He too was physically and verbally abusive to the three women in the home.[38] At age 17, Ms. Golden cried for help by calling police, but was ignored.

As a teenager, Ms. Golden was encouraged to work. She sought a job at a local blueberry farm where she was sexually assaulted by a co-worker.[39] This event, known to Ms. Golden's mother, did not impact her home life.[40] Encouraged to find a new job, Ms. Golden worked for a short while at a fast food restaurant, and then at the enticement of her own mother, entered a life of prostitution.[41] Ms. Golden worked in the capacities of prostitute, escort, and exotic dancer on and off from approximately 2007, when she was age 16, until approximately 2017 at age 26. She

---

[30] PSR, ¶.88 and 89.
[31] PSR, ¶.87 and 88.
[32] PSR, ¶.89.
[33] Id.
[34] Id.
[35] Id.
[36] Id.
[37] PSR, ¶.90.
[38] PSR, ¶.90 and 91.
[39] PSR, ¶.91.
[40] Id.
[41] PSR, ¶.91 and 92.

left the life of prostitution after meeting Wisdom in Atlanta, Georgia, where she learned to earn money by laundering money from his fraud schemes.

Ms. Golden has little education or meaningful work experience. She dropped out of high school in 11th grade.[42] She later earned her GED.[43] While she was enrolled in a community college, "[s]he left the school as a freshman and was in poor scholastic standing."[44] She later earned a Certifies Nursing Assistance (CNA) license but did not acquire any work experience in this field. Her employment history consists of working as a receptionist, call representative, waitress, and sales associate. She never maintains any one job long enough to acquire any real experience. Her potential resume presently has little to offer in terms of education and work history. This is partially because Ms. Golden was socialized into a life of prostitution at an early age and came to rely on selling her body to earn a living. This obviated the need for her to search for a real, and arguably lower paying job. Once introduced to the profits associated with fraud schemes, she ceased being a sex worker and shifted her efforts to helping her various co-defendants with laundering ill-gained proceeds.

Ms. Golden has not had much stability in her life. As described above, various men came and went from her home in terms of a male father figure. Mom divorced her various abusive husbands and her father eventually died.[45] Geographically, moved around a lot and has lived with various men and other friends in places such as New Albany, Mississippi; Tupelo, Mississippi; Jasper, Alabama; Birmingham, Alabama; Houston, Texas; and Atlanta, Georgia.[46] She has tenuous relations with her family and is not even sure where or with whom she will live once released from incarceration. While she hoped she could live with her only sister,[47]

---

[42] PSR, ¶.129.
[43] *Id.*
[44] *Id.*
[45] PSR, ¶.98.
[46] PSR, ¶.109.
[47] PSR, ¶.110.

Danielle, the two have a strained relationship. When interviewed by U.S. Probation, Danielle was not committed to opening her home to Ms. Golden upon release from custody.[48]

In terms of personal relationships, Ms. Golden has not always made the best choices with respect to her partners. For instance, she first got married at 16.[49] Her first husband enlisted in the Marine Corps and left home for active duty. Within months, he divorced her.[50] Many of the men she dated or met were either clients or persons for whom she did sexual favors in exchange for money, drugs, or other benefits. She met and dated Wisdom Onyobeno on a dating application.[51] This prompted her to move to Atlanta, Georgia where they dated for a few months. The relationship ended, but the two continued working together as co-conspirators in connection with fraud schemes.

Ms. Golden ultimately met her current husband, Joshua Roberts, while living in Atlanta, Georgia in approximately 2018.[52] They married about one year later during a trip to Las Vegas in 2019.[53] Josh has a history of verbal abuse toward Ms. Golden.[54] It was so bad that it caused her to have suicidal ideations.[55] Ms. Golden had talked of divorcing Josh, but now is open to reconciling their relationship. They have experienced separation and infidelity. Josh is also a co-conspirator from the Northern District of Georgia case. On August 10, 2022, he was sentenced to serve 97 months for his admitted involvement in fraud schemes.[56]

**(3) Mental Health**

Unsurprisingly given her life history, Ms. Golden has a mental health history that dates

---

[48] PSR, ¶.111.
[49] PSR, ¶.103.
[50] *Id.*
[51] PSR, ¶.49.
[52] PSR, ¶.104.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *United States v. Joshua Roberts*, Case No. 1:20-CR-114-02-WMR-CCB-10, Docket No. 761.

back to at least 2016 in Houston, Texas where she was diagnosed with ADHD.[57] While in custody, she attends counseling.[58] She also has a history of suicidal ideations, and was placed on suicide watch at Wyatt.[59] In addition to ADHD, she has been diagnosed with anxiety, depression adjustment disorder, and borderline personality disorder.[60] Ms. Golden also experienced a miscarriage, for which her husband was both unsupportive and indifferent.[61] This undoubtedly exacerbated her underlying mental health conditions.

In 2021, in preparation for sentencing in the Northern District of Georgia, defense counsel caused Ms. Golden to be evaluated by Dr. Adriana F. Flores.[62] In her report, Dr. Flores notes:

> Ms. Golden has borderline personality (BPD) disorder characteristics that likely stem from her extensive childhood trauma. She becomes attached to others quickly, and fears abandonment. She puts up with abusive treatment in order to avoid abandonment and rejection. She said, "I get attached real quick, to the point I want to make them happy, and please them so they don't leave then. And, even if they make me feel bad, I don't leave them because I'm used to it. And, I don't like to be treated bad, but I don't want them to leave."
>
> a. Ms. Golden's husband has been unfaithful multiple times, and she "Always forgive(s) him, no matter what. Just to keep him around."
>
> b. She has remained in violent relationships rather than being alone.
>
> c. Her lack of sense of self-worth is consistent with BPD.
>
> d. She has an unstable sense of self-image.
>
> e. Ms. Golden has a history of engaging in self-

---

[57] PSR, ¶.118.
[58] PSR, ¶.120.
[59] Id.
[60] PSR, ¶.118 and 119.
[61] PSR, ¶.106.
[62] PSR, ¶.116 – 119. Dr. Flores' report is filed separately under seal.

> injurious behavior and self-destructive behaviors, including substance use and risky sexual encounters.

Ms. Golden asks the Court to factor in her mental and emotional conditions when imposing sentence, as such, at least in part, impacted her choice to engage in misconduct. Pursuant to U.S.S.G. § 5H1.3, "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offending characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." The Defense avers that this provision ought to apply to Ms. Golden, given her unique life history and how she became involved in this misconduct.

**(4) Drug Use**

In addition to the diagnosis above, Dr. Flores also diagnosed Ms. Golden with various substance abuse disorders associated with alcohol, methamphetamines, marijuana, and cocaine. She asks the Court to take this into consideration, as well, when fashioning her sentence. While drugs did not motivate Ms. Golden's instant crimes, they played a large part in explaining this road she traveled, which ended before this Court. Ms. Golden started using alcohol at age 16, and then marijuana at 18, long before it was legalized for medicinal or recreational purposes. She also was introduced to and became hooked for periods of time on smoking crystal methamphetamine. She even used pills such as Xanax, Percocet, and Molly. Sometimes she bought drugs, whereas other times they were given to her in exchange for sexual favors. Needless to say, her addictions, at least in part, contributed in some manner to her poor decision-making to form relationships with bad influential men, and then work with them to commit criminal conduct.

**(5) Time Already Served**

Ms. Golden was first arrested and then released in Texas on September 12, 2019. She was

later arrested a second time, related to the Northern District of Georgia case, on March 10, 2020. She has remained in custody continuously since that time. As of January 2023, Ms. Golden will have served a total of 1052 days or 34.5 months in custody. Aside from the fraudulent conduct that caused her to be federally prosecuted, she has no other significant criminal history and has certainly never been to prison before. The time she has spent in pretrial custody has been objectively significant, especially considering she has never been incarcerated before. Of the 52 months imposed by the Northern District of Georgia, Ms. Golden has approximately 10 months left to serve before being released, assuming she receives a full 15% good time credit. She asks the Court to take this into consideration when imposing sentence.

In terms of jail credit for time served, 18 U.S.C. § 3585 provides that a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." Ms. Golden was released on bail by this Court. She was ordered detained in the Northern District of Georgia and resolved her case there first. Hence, the time spent in pretrial custody in Georgia will be credited against the offense and resulting sentence there.

Procedurally, the manner by which this case was prosecuted by the government placed Ms. Golden at an uncontrollable disadvantage. She was granted bail in one district and denied it in another. This stifled her ability to resolve the Rhode Island case, or to accumulate pretrial credits toward punishment sought by the federal government. While her crimes may have been separate and distinct, they were similar in nature and can be characterized as a pattern. These cases could have and should have been disposed of together in a single district, but such an option was not

13

extended to Ms. Golden. Because of tactical decisions made by the government, Ms. Golden should not receive double the punishment, for what was really an ongoing course of criminal conduct that victimized people in more than one federal district.

## V. ATTACHMENTS

A. Letter to U.S. Probation;

B. Statements of Support;

C. Certificates of Completion; and

D. Photos.

## VI. CONCLUSION

Based upon the foregoing, Ms. Golden respectfully asks the Court to impose a sentence of time served, so that her total period of incarceration does not exceed 52 months.

Respectfully submitted on this 24th day of January 2023.

>Respectfully submitted
>Defendant,
>Dominique Golden
>By her Counsel
>
>/s/ John L. Calcagni III, Esq.
>John L. Calcagni III (Bar No.: 6809)
>Law Office of John L. Calcagni III, Inc.
>72 Clifford Street, Third Floor
>Providence, RI 02903
>Phone: (401) 351.5100
>Fax: (401) 351.5101
>Email: jc@calcagnilaw.com

## **CERTIFICATION**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 24th day of January 2023.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No. 6809)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email: jc@calcagnilaw.com